JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                          :
UNITED STATES OF AMERICA                  :
                                          :
          - v. -                          :
                                          :
JOSEPH EL-KHOURI,                         :
                                          :
          Defendant.                      :
                                          :
- - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 2 1 2019

SEALED INDICTMENT

19 Cr.

19 CRIM 652

## COUNT ONE
### (Conspiracy to Commit Securities Fraud and
### Fraud in Connection with a Tender Offer)

The Grand Jury charges:

### Relevant Individuals and Entities

1.     At all times relevant to this Indictment, JOSEPH EL-KHOURI, the defendant, was a citizen of the United Kingdom, residing in London, England.

2.     At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1") was an investment banker who lived in London.

3.     At all times relevant to this Indictment, another co-conspirator not named as a defendant herein ("CC-2") was an investment banker at a global investment banking advisory firm with offices in, among other locations, London, England, and Manhattan, New York (the "Investment Bank").  CC-2 lived in London with CC-1.  During this time period, CC-1 and CC-2 were involved in a romantic relationship.

4.    At all times relevant to this Indictment, another co-conspirator not named as a defendant herein ("CC-3") lived in London and was a close friend of JOSEPH El-KHOURI, the defendant.  CC-3 was also close friends with CC-1 and CC-2.

5.    At all times relevant to this Indictment:

a.    Hyperion Therapeutics, Inc. ("Hyperion") was a biopharmaceutical company headquartered in San Francisco, California.  Hyperion's securities traded under the symbol "HPTX" on NASDAQ.  During this time period, Hyperion was a client of the Investment Bank.

b.    Horizon Pharma plc ("Horizon") was a pharmaceutical company with headquarters in Dublin, Ireland.  Horizon's securities traded under the symbol "HZNP" on NASDAQ.  During this time period, Horizon offered to acquire, and acquired, Hyperion.

c.    Pharmacyclics Inc. ("Pharmacyclics") was a biopharmaceutical company with headquarters in Sunnyvale, California.  Pharmacyclics' securities traded under the symbol "PCYC" on NASDAQ.  During this time period, Pharmacyclics was a client of the Investment Bank.

d.    Receptos Inc. ("Receptos") was a biotechnology company with headquarters in San Diego, California.  Receptos' securities traded under the symbol "RCPT" on NASDAQ.  During this time period, Receptos was a client of the Investment Bank.

2

e.   Celgene Corporation ("Celgene") was a biopharmaceutical company with headquarters in Summit, New Jersey.  Celgene's securities traded under the symbol "CELG" on NASDAQ.  During this time period, Celgene offered to acquire, and later acquired, Receptos.

f.   Omnicare, Inc. ("Omnicare") was a health care company with headquarters in Cincinnati, Ohio.  Omnicare's securities traded under the symbol "OCR" on the New York Stock Exchange ("NYSE").  During this time period, Omnicare was a client of the Investment Bank.

g.   Solera Holdings, Inc. ("Solera") was a digital technology company with headquarters in Westlake, Texas. Solera's securities traded under the symbol "SLH" on the NYSE. During this time period, Solera was a client of the Investment Bank.

h.   Johnson Controls International PLC ("Johnson Controls") was a diversified technology company with headquarters in Milwaukee, Wisconsin.  Johnson Controls' securities traded under the symbol "JCI" on the NYSE.  During this time period, Johnson Controls was a client of the Investment Bank and was engaged in discussions about the potential acquisition of EnerSys.

i.   EnerSys was a manufacturing company with headquarters in Reading, Pennsylvania (together with the

3

companies listed in Paragraph 5(a)-(h) above, the "Subject Companies"). EnerSys' securities traded under the symbol "ENS" on the NYSE.

### The Insider Trading Scheme

*CC-2 Steals Confidential Information*
*from the Investment Bank*

6.    At all times relevant to this Indictment, the Investment Bank maintained policies and procedures that prohibited insider trading, including the disclosure of material, non-public information ("MNPI") to third parties.  By virtue of CC-2's employment at the Investment Bank, CC-2 was aware of and bound by those policies and procedures.

7.    Notwithstanding CC-2's awareness of these policies and procedures, CC-2 regularly accessed computer files at the Investment Bank for deals involving the Subject Companies which were clients of the Investment Bank, often in instances where CC-2 was not assigned to the team working on that transaction. CC-2 then shared that MNPI with CC-1 with the understanding that CC-1 would pass that information on to others for the purpose of placing timely, profitable securities trades. CC-2 did this in order to receive a portion of the profits of such trading activity in the form of cash, gifts, and other benefits.

*CC-1 Provides MNPI About the Subject Companies to CC-3*

8.    After CC-1 obtained MNPI from CC-2, CC-1 passed that

information to CC-3.  CC-1 understood that CC-3 was a middleman who passed the MNPI on to others who would place timely, profitable trades in the relevant stock.

9.    In return for the information CC-1 provided, CC-3 provided CC-1 with cash and other benefits.

*CC-3 Provides MNPI to JOSEPH EL-KHOURI in Exchange for Cash and Other Benefits*

10.    After CC-3 obtained MNPI from CC-1, CC-3 provided that MNPI to JOSEPH EL-KHOURI, the defendant.  CC-3 provided the information to EL-KHOURI to allow EL-KHOURI to place timely, profitable trades in the stock of the relevant company.  In turn, EL-KHOURI agreed to share a portion of his illicit proceeds with CC-3 in the form of cash, gifts, and other benefits including travel and expensive hotel stays.  As EL-KHOURI well knew, CC-3 used a portion of the cash EL-KHOURI provided to compensate the inside source who provided MNPI to CC-3.

11.    At all times relevant to this Indictment, JOSEPH EL-KHOURI, the defendant, and CC-3 regularly communicated both in person as well as by phone about the insider trading scheme, including with encrypted messaging applications.  They also used prepaid "burner phones" for which they did not provide any subscription information to the phone service provider and which they destroyed and replaced on a regular basis.

12.   Upon receiving MNPI from CC-3, JOSEPH EL-KHOURI, the defendant, placed numerous timely, profitable trades in the stock of certain of the Subject Companies thereby reaping nearly $2 million in profits.  In particular, EL-KHOURI traded in (a) the shares of Hyperion, Pharmacyclics, Receptos, Omnicare, and Solera shortly after CC-2 accessed and shared MNPI about those companies with CC-1, and (b) the shares of EnerSys shortly after CC-2 accessed and shared MNPI related to Johnson Controls with CC-1.

### Statutory Allegations

13.   From at least in or about February 2015 through in or about October 2015, in the Southern District of New York and elsewhere, JOSEPH EL-KHOURI, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) fraud in connection with a tender offer, in violation of Title 15, United States Code, Sections 78n(e) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

14.   It was a part and object of the conspiracy that JOSEPH EL-KHOURI, the defendant, and others known and unknown,

willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulation, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons.

15.   It was a further part and an object of the conspiracy that JOSEPH EL-KHOURI, the defendant, and others known and unknown, willfully and knowingly would and did engage in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken a substantial step to commence a tender offer, EL-KHOURI, and others known and unknown, while in possession of material information relating to such tender offer, which information they knew and had reason to know was non-public and which they knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of

the securities sought and to be sought by such tender offer, and
an officer, director, partner, and employee and other person
acting on behalf of the offering person and such issuer: (a)
purchased and sold and caused to be purchased and sold; and (b)
communicated such material, non-public information under
circumstances in which it was reasonably foreseeable that such
communication would likely result in the purchase and sale of
such securities and securities convertible into and exchangeable
for such securities and options and right to obtain and to
dispose of such securities and options, without such information
and its source having been publicly disclosed by press release
and otherwise within a reasonable time prior to such purchase
and sale, in violation of Title 15, United States Code, Sections
78n(e) and 78ff; and Title 17, Code of Federal Regulations,
Sections 240.14e-3(a) and 240.14e-3(d).

Overt Acts

16.   In furtherance of the conspiracy, and to effect the
illegal objects thereof, JOSEPH EL-KHOURI, the defendant, and
others known and unknown, committed the following overt acts,
among others, in the Southern District of New York and
elsewhere:

a.   On or about February 19, 2015, CC-2 while
employed at the Investment Bank, accessed a file on the

Investment Bank's computer network relating to the potential acquisition of Pharmacyclics.

      b.   In or about March 2015, EL-KHOURI, while in Manhattan, New York, provided CC-3 with cash and gifts in connection with their stay at a hotel in Manhattan, New York, in exchange for CC-3 providing EL-KHOURI with MNPI relating to various corporate transactions.

      (Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud and Securities Fraud)

The Grand Jury further charges:

    17.   The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

    18.   From at least in or about February 2015 through in or about October 2015, in the Southern District of New York and elsewhere, JOSEPH EL-KHOURI, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) securities fraud, in violation of Title 18, United States Code, Section 1348.

    19.   It was a part and an object of the conspiracy that JOSEPH EL-KHOURI, the defendant, and others known and unknown,

willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

20. It was further a part and an object of the conspiracy that JOSEPH EL-KHOURI, the defendant, and others known and known, willfully and knowingly would and did execute a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the

Securities Exchange Act of 1934, in violation of Title 18,
United States Code, Section 1348.

(Title 18, United States Code, Section 1349.)

## COUNTS THREE THROUGH EIGHT
### (Securities Fraud)

The Grand Jury further charges:

21.    The allegations contained in paragraphs 1 through 12
and 16 of this Indictment are hereby repeated, realleged, and
incorporated by reference, as if fully set forth herein.

22.    On or about the dates set forth below, in the Southern
District of New York and elsewhere, JOSEPH EL-KHOURI, the
defendant, willfully and knowingly, directly and indirectly, by
the use of means and instrumentalities of interstate commerce,
and of the mails, and of facilities of national securities
exchanges, used and employed in connection with the purchase and
sale of securities manipulative and deceptive devices and
contrivances, in violation of Title 17, Code of Federal
Regulations, Section 240.10b-5, by: (a) employing devices,
schemes, and artifices to defraud; (b) making untrue statements
of material fact and omitting to state material facts necessary
in order to make the statements made, in the light of the
circumstances under which they were made, not misleading; and
(c) engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon persons,

11

to wit, EL-KHOURI, executed and caused to be executed timely

securities transactions, based on MNPI supplied, as EL-KHOURI

well knew, in breach of a duty, including the securities

transactions listed below on or about the dates listed below:

| Count | Transaction Date | Company | Transactions |
|-------|------------------|---------|--------------|
| 3 | In or about March 2015 | Hyperion | Purchases of at least approximately 33,000 CFDs |
| 4 | In or about March 2015 | Pharmacyclics | Purchases of at least approximately 5,000 CFDs |
| 5 | In or about March and April 2015 | Receptos | Purchases of at least approximately 57,000 CFDs |
| 6 | In or about April and May 2015 | Omnicare | Purchases of at least approximately 116,944 CFDs |
| 7 | In or about August and September 2015 | Solera | Purchases of at least approximately 90,000 CFDs |
| 8 | In or about September and October 2015 | Enersys | Purchases of at least approximately 62,000 CFDs |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNTS NINE AND TEN
### (Fraud in Connection with Tender Offers)

The Grand Jury further charges:

23.   The allegations contained in paragraphs 1 through 12

and 16 of this Indictment are hereby repeated, realleged, and

incorporated by reference, as if fully set forth herein.

24.   On or about the dates set forth below, in the Southern

District of New York and elsewhere, JOSEPH EL-KHOURI, the

defendant, willfully and knowingly engaged in fraudulent,

deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken a substantial step to commence a tender offer, EL-KHOURI, while in possession of material information relating to such tender offer, which information he knew and had reason to know was non-public and which he knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought and to be sought by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer: (a) purchased and sold and caused to be purchased and sold; and (b) communicated such material, non-public information under circumstances in which it was reasonably foreseeable that such communication would likely result in the purchase and sale of such securities and securities convertible into and exchangeable for such securities and options and right to obtain and to dispose of such securities and options, without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, to wit, EL-KHOURI, executed and caused to be executed securities transactions, based on MNPI supplied in breach of a duty, including the securities transactions listed below on or about the dates listed below:

| Count | Transaction Date | Company | Transactions |
|---|---|---|---|
| 9 | In or about March 2015 | Hyperion | Purchases of at least approximately 33,000 CFDs |
| 10 | In or about March and April 2015 | Receptos | Purchases of at least approximately 57,000 CFDs |

(Title 15, United States Code, Sections 78n(e) & 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) & 240.14e-3(d); and Title 18, United States Code, Section 2.)

### COUNTS ELEVEN THROUGH SIXTEEN
### (Wire Fraud)

The Grand Jury further charges:

25.   The allegations contained in paragraphs 1 through 12 and 16 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

26.   On or about the dates set forth below, in the Southern District of New York and elsewhere, JOSEPH EL-KHOURI, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, through the use of interstate wires, including interstate and international telephone calls, EL-KHOURI participated in a scheme to defraud

at least the Investment Bank, Hyperion, Pharmacyclics, Receptos,
Omnicare, Solera, and Johnson Controls of valuable confidential
information, obtained, as EL-KHOURI well knew, in breach of
fiduciary and other duties owed to the Subject Companies, by
deceptively converting that information to his own use and the
use of others for the purpose of committing insider trading and
executing the securities transactions listed below:

| Count | Transaction Date | Company | Transactions |
|---|---|---|---|
| 11 | In or about March 2015 | Hyperion | Purchases of at least approximately 33,000 CFDs |
| 12 | In or about March 2015 | Pharmacyclics | Purchases of at least approximately 5,000 CFDs |
| 13 | In or about March and April 2015 | Receptos | Purchases of at least approximately 57,000 CFDs |
| 14 | In or about April and May 2015 | Omnicare | Purchases of at least approximately 116,944 CFDs |
| 15 | In or about August and September 2015 | Solera | Purchases of at least approximately 90,000 CFDs |
| 16 | In or about September and October 2015 | Enersys | Purchases of at least approximately 62,000 CFDs |

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT SEVENTEEN
### (Securities Fraud)

The Grand Jury further charges:

27.   The allegations contained in paragraphs 1 through 12
and 16 of this Indictment are hereby repeated, realleged, and
incorporated by reference, as if fully set forth herein.

28.   From at least in or about February 2015 through in or

15

about October 2015, in the Southern District of New York and
elsewhere, JOSEPH EL-KHOURI, the defendant, willfully and
knowingly executed a scheme and artifice to (a) defraud persons
in connection with securities of an issuer with a class of
securities registered under Section 12 of the Securities
Exchange Act of 1934 and that was required to file reports under
Section 15(d) of the Securities Exchange Act of 1934, and (b)
obtain, by means of false and fraudulent pretenses,
representations, and promises, money and property in connection
with the purchase and sale of securities of an issuer with a
class of securities registered under Section 12 of the
Securities Exchange Act of 1934 and that was required to file
reports under Section 15(d) of the Securities Exchange Act of
1934, to wit, EL-KHOURI engaged in a scheme to defraud at least
Hyperion, Pharmacyclics, Receptos, Omnicare, Solera, and Johnson
Controls of valuable confidential information obtained, as EL-
KHOURI well knew, in breach of fiduciary and other duties owed
to the Subject Companies, by deceptively converting that
information to his own use and the use of others, using cellular
telephones and e-mail communications, for the purpose of
executing transactions in the securities of Hyperion,
Pharmacyclics, Receptos, Omnicare, Solera, and EnerSys.

(Title 18, United States Code, Sections 1348 and 2.)

16

## FORFEITURE ALLEGATION

29.   As a result of committing one or more of the offenses alleged in Counts One through Seventeen of this Indictment, JOSEPH EL-KHOURI, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Seventeen of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

### Substitute Assets Provision

30.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

    e.    has been commingled with other property which

cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described above.

            (Title 18, United States Code, Section 981;
            Title 21, United States Code, Section 853; and
            Title 28, United States Code, Section 2461.)


FOREPERSON

                        Audrey Strauss
                        Attorney for the United States,
                        Acting Under Authority Conferred
                        by 28 U.S.C. § 515

18

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOSEPH EL-KHOURI,

Defendants.

### SEALED INDICTMENT

19 Cr.

(Title 15, United States Code, Sections
78j(b),78n(e), and 78ff; Title 17, Code of
Federal Regulations, Sections 240.10b-5,
240.14e-3(a), and 240.14e-3(d); Title 18,
United States Code, Sections 2, 371, 1343,
1348, and 1349.)


_____
Foreperson

AUDREY STRAUSS
Attorney for the
United States
Acting Under
 Authority
Conferred by
28 U.S.C. § 515

9/8/19  FILED INDICTMENT

COTT, USMJ